IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JENNIFER L. SUGG, )
 )
        Plaintiff, )
 )
vs. ) Case No. 17-cv-00375-JPG-CJP
 )
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
 )
        Defendant.[1] )

## MEMORANDUM & ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Jennifer L. Sugg seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB and SSI on September 18, 2009, alleging an onset date of October 1, 2007. (Tr. 203-12.) She later amended her onset date to September 6, 2009. (Tr. 223.) Plaintiff's claims were denied initially in March 2010 and again upon reconsideration in May 2010. (Tr. 104-15.) Plaintiff requested an evidentiary hearing, which Administrative Law Judge (ALJ) Joseph Warzycki conducted in August 2011 and March 2012. (Tr. 42-95.) ALJ Warzycki issued an unfavorable decision in May 2012. (Tr. 25-35.) The Appeals Council denied plaintiff's request for review in June 2013 and she filed a timely Complaint in this Court in November 2014. (Tr. 14-17, 777-85.) The parties filed an Agreed Motion to Remand in February 2015. (Tr. 786-87.) The Court issued a judgment thereafter, reversing the

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See Casey v. Berryhill*, 853 F.3d 322 (7th Cir. 2017). She is automatically substituted as defendant in this case. *See* FED. R. CIV. P. 25(d); 42 U.S.C. §405(g).

1

Commissioner's decision and remanding plaintiff's case to the Commissioner for rehearing and reconsideration. (Tr. 789-91.)

On remand, ALJ Stephen Hanekamp conducted an evidentiary hearing in May 2016. (Tr. 722-45.) ALJ Hanekamp issued a partially favorable decision in September 2016; he found plaintiff was disabled from September 6, 2009 through June 20, 2011. However, the ALJ opined medical improvement occurred as of June 21, 2011 and plaintiff was not under a disability since that date. (Tr. 694-712.) The Appeals Council reviewed the ALJ's decision and found no reason to assume jurisdiction. (Tr. 669-72.) The ALJ's decision therefore became the final agency decision. Plaintiff exhausted her administrative remedies and filed a timely Complaint in this Court. (Doc. 1.)

## Plaintiff's Arguments

Plaintiff argues the ALJ failed to identify and resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT); erred in relying on vocational expert (VE) testimony that lacked a reliable basis; erroneously relied on a VE opinion regarding unreliable data related to job incidence; and failed to elicit evidence of availability of jobs existing in plaintiff's geographic region of the country.

## Legal Standards

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must

prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.[2]

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but the impairment is neither listed in nor equivalent to the impairments in the regulations—failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported

---

[2] The legal standards for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) are largely the same. The above paragraph in this order cites the relevant statutory provisions for DIB, while the SSI provisions are located at 42 U.S.C. §§ 1382c(a)(3)(A), 1382c(a)(3)(D), and 20 C.F.R. § 416.972. Most citations herein are to the DIB regulations out of convenience, but also apply to SSI challenges.

by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### **The ALJ's Decision**

ALJ Hanekamp found plaintiff met the insured status requirements through December 31, 2014 and had not engaged in substantial gainful activity since September 6, 2009: the alleged onset date. (Tr. 699.) From September 6, 2009 through June 20, 2011, plaintiff had severe impairments of DDD, coronary artery disease, mood disorder, and panic disorder, which rendered her disabled. (Tr. 699, 705.) The ALJ opined plaintiff had the same severe impairments after June 20, 2011 with the addition of carpal tunnel syndrome in her right upper extremity. (Tr. 705.) Medical improvement occurred as of June 21, 2011 following plaintiff's spinal surgery. (Tr. 706-07.) Plaintiff had the RFC to perform light work with several exceptions. Relevant here, the ALJ found plaintiff could only frequently handle and finger with the dominant right upper extremity, must avoid exposure to pulmonary irritants, and must avoid exposure to temperatures twenty degrees and below, and ninety-five degrees and above, for over thirty minutes.[3] The ALJ determined jobs existed in the national economy that plaintiff could

---

[3] Plaintiff takes issue only with the RFC assessment beginning June 21, 2011, the date of medical improvement. Thus, any reference to an RFC assessment throughout the opinion is in reference to the RFC assessment on that date.

perform. (Tr. 707-11.) In sum, the ALJ determined plaintiff was disabled from September 6, 2009 through June 20, 2011 but not thereafter. (Tr. 712.)

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to plaintiff's arguments.

### 1. Agency Forms

In the most recent agency forms, dated November 2014 and May 2015, plaintiff indicated that heart conditions, a bad back, degenerative disc disease (DDD), a pinched nerve in her back, gastroesophageal reflux disease (GERD), depression, anxiety, a hernia, and chronic obstructive pulmonary disease (COPD) limited her ability to work. (Tr. 876, 908.)

Plaintiff was born in 1964. She finished one year of college and completed certified nursing assistant training in 1988. Plaintiff stated she sometimes lay down all day. She experienced pain when rolling over, overall discomfort, and racing thoughts. Plaintiff was able to prepare simple meals like sandwiches and cereal. She fed and watered her dogs and cat when her husband was at work. She did not perform household chores because of back pain, depression, weight restrictions, and shortness of breath. She seldom went outside. Plaintiff could shop for household items with the assistance of her husband. She shopped about two times each month for thirty minutes or less at a time. Plaintiff could no longer swim, tan, socialize, or work. She was reclusive because of depression and anxiety. Plaintiff was able to walk thirty to forty feet before she needed to rest for about five to ten minutes. She lost attention easily and had difficulty following directions. (Tr. 872-93.)

### 2. Evidentiary Hearing

ALJ Hanekamp conducted an evidentiary hearing on May 9, 2016. Plaintiff was represented by counsel. (Tr. 722-45.) A VE testified regarding a younger individual with the following RFC:

> a range of light, 20 pounds occasion [sic], 10 pounds frequently, standing and walking, total of six hours in eight, sitting, total of six hours in eight. No ladders, ropes or scaffolds. Balancing, kneeling, crouching, crawling, stooping, ramps, and stairs are all occasional. Right leg controls, frequent. No dangerous unprotected heights, no dangerous unprotected moving machinery, no whole body vibration, no concentrated exposure to pulmonary irritants, for example, no work environment where there would be airborne particulates from grinding or sanding processes for example. And temperatures, 20 degrees Fahrenheit or below, 95 degrees or above, both of those are limited to 30 minutes maximum at a time. And the person would be limited to simple, routine tasks.

The VE opined that an individual with the above limitations could work as a housekeeper, for which there are 371,379 jobs available nationally; routing clerk, for which there are 74,788 jobs available nationally; and folding machine operator, for which there are 119,960 jobs available nationally. The ALJ then asked the VE to consider a person with the same limitations except that she could only lift a maximum of ten pounds and stand/walk for a total of two hours in an eight-hour workday, as opposed to six hours. The VE opined that this individual could work as a charge account clerk (204,730 available jobs nationally), final assembler (229,240 available jobs nationally), and document preparer (97,252 available jobs nationally). (Tr. 740-41.)

The ALJ next enquired: "Then with regards to both sets of jobs that you identified, if handling and fingering were frequent, does that change your answer?" The VE replied: "No, it does not." The ALJ continued: "And then if handling and fingering with the dominant arm were occasional, does that change your answer?" The VE explained:

> The DOT does not differentiate between hands, dominant or non-dominant with regard to handling and fingering, so that's just based upon my experience. With that being the dominant arm I think it would be very difficult for the individual to maintain competitive level employment and stay at the productivity rate that would be necessary to maintain employment.

(Tr. 741.)

The VE further explained that absenteeism is not addressed in the DOT but based off of her experience, an unskilled worker can be absent one to two times each month. However, being absent twice per month on a continuous, long-term basis would make it difficult for an individual to maintain competitive level employment. (Tr. 742.)

The ALJ also asked how an individual's employment would be affected if she needed to stand from a seated position once an hour for five minutes. The VE stated that the DOT does not address alternating between sitting and standing but based on the VE's experience, sedentary level jobs would not be affected. (Tr. 742.)

The VE testified that her testimony did not conflict with the information in the DOT except for the differences she already identified. The VE utilized information from the Department of Labor, Bureau of Labor, and US Publishing to determine the number of jobs available for each position she identified. (Tr. 742-43.)

### 3. Medical Records

Plaintiff had a myocardial infarction in 2007 and was diagnosed with coronary artery disease. She underwent stent placement and cutting balloon angioplasty in October 2007 but continued to complain of shortness of breath and chest pain thereafter. Plaintiff had several cardiac catheterizations in the following years. Her most recent catheterization took place in July 2013 and demonstrated no significant coronary artery stenosis; continued patency of the stent to the right coronary artery; a patent superior mesenteric artery; and a normal ejection fraction of 55%. (Tr. 1210-11.)

Plaintiff's primary care physician was Dr. Dean Schueler. Plaintiff first complained of back pain to Dr. Schueler in January 2008. She was later diagnosed with lumbar DDD at L4-L5

and L5-S1; spinal stenosis of L4 through S1; and ataxia and right radiculopathy, which made it difficult for her to walk due to pain and an inability to move her leg. Dr. Schueler prescribed a variety of pain medications, including Depo Medrol, valium, fentanyl, and Toradol. (Tr. 506).

On April 5, 2008, plaintiff attended a psychological consultation at Gateway Regional Medical Center. Dr. Arif Habib diagnosed plaintiff with major depressive disorder, mild to moderate, and generalized anxiety disorder. Plaintiff was taking Effexor for depression, which was somewhat helpful. She also took Xanax but was still very anxious. Dr. Habib started plaintiff on Vistaril and Trazadone. (Tr. 383-84.)

Plaintiff treated with neurologist Dr. David Kennedy and Dr. Gregory Randle for her back pain. Dr. Randle administered several epidural injections in 2009 that did not significantly improve plaintiff's pain. (Tr. 592-94, 635-42.) Plaintiff also participated in physical therapy with no improvement in her symptoms. (Tr. 534.)

In June 2010, plaintiff underwent a bilateral lumbar laminectomy and facetectomy; posterior spinal fusion with bone morphogenic protein and mosaic; and spinal instrumentation with Monarch instrumentation. (Tr. 544-50.) Following surgery, plaintiff continued to complain of back pain, stiffness, and soreness. She also had a dull sensation in her right lower extremity and her right big toe occasionally went numb. (Tr. 565.)

On June 21, 2011, the date the ALJ found medical improvement, plaintiff presented to Dr. Schueler for a follow-up appointment. Dr. Schueler noted plaintiff "did well" following back surgery. On exam, plaintiff was negative for anxiety, depression, and muscle weakness. Dr. Schueler continued to prescribe plaintiff Valium for anxiety and instructed plaintiff to call if she experienced more pain. (Tr. 574-76.)

In July 2012, plaintiff underwent carpal tunnel release and ulnar compressive neuropathy release of the right elbow. (Tr. 947-48.)

Plaintiff's last visit of record with Dr. Schueler is dated February 29, 2016. Dr. Schueler assessed plaintiff with lumbar disc degeneration, hypertension, anxiety, and hyperlipidemia. Plaintiff was taking hydrocodone for back pain and valium for anxiety. (Tr. 1213-17.)

## Analysis

At step five of the sequential analysis, if the ALJ finds the claimant cannot perform her past work, the Commissioner bears the burden of showing that she is capable of performing other work that exists in significant numbers in the economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). In making this determination, the ALJ often relies on the DOT for information about the typical characteristics of jobs. The ALJ also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

Pursuant to Social Security Ruling (SSR) 00-4p, an ALJ has an affirmative duty to ask the vocational expert whether there are any conflicts between her testimony and the information in the DOT. SSR 00-4p, at *2. Once an ALJ identifies a conflict, the ALJ must elicit a reasonable explanation for the discrepancy and explain in his decision how he resolved the conflict. *Id.*

Plaintiff argues the ALJ failed to resolve several conflicts between the VE's testimony and the DOT. Plaintiff first challenges the VE's testimony regarding handling and fingering limitations. At the hearing, the ALJ asked the VE to consider an individual who had the ultimate RFC assessment, including the limitation of only frequent handling and fingering.

9

The VE replied that the individual could work as a cleaner housekeeper (DOT number 323.687-014), routing clerk (DOT number 222.687-022), and folding machine operator (DOT number 208.685-014). According to the DOT, all of these jobs require only frequent handling. Additionally, they mandate either occasional or frequent fingering. Thus, there is no conflict between this portion of the VE's testimony and the DOT. Notably, the RFC posed to the VE at the hearing was more limited than the ultimate RFC assessment. The VE considered an individual who was limited in both extremities to only frequent handling and fingering, while the ALJ found plaintiff was only limited to frequent handling and fingering in her dominant extremity.

The ALJ then asked the VE to consider an individual who was limited to only occasional handling and fingering in the dominant extremity. The VE explained that the DOT does not differentiate between the two in articulating handling and fingering requirements. However, based on the VE's experience, the person would have a very difficult time maintaining employment.

As plaintiff asserts, this Court has recognized that a conflict exists when a VE testifies to information not contained in the DOT. *Loellke v. Berryhill*, 2017 WL 3616691, at *5 (S.D. Ill. Aug. 23, 2017); *Addams v. Berryhill*, 2017 WL 4518347, at *5 (S.D. Ill. Oct. 10, 2017). However, the VE only differentiated between the dominant and non-dominant extremities when she testified about a person restricted to *occasional* handling and fingering – a limitation the ALJ did not adopt in the RFC assessment. Thus, any error in failing to resolve a conflict there was harmless.

Plaintiff next argues the VE's testimony conflicted with the DOT when she testified to the employability of a person who could not work around certain pulmonary irritants or in

certain temperatures; the DOT does not address these particular restrictions. The ALJ did not err in failing to resolve these potential conflicts, however, because plaintiff did not identify them at the hearing. An ALJ only has a duty to inquire into apparent conflicts. *Zblewski v. Astrue*, 302 F. App'x 488, 494 (7th Cir. 2008). Thus, when a claimant fails to point out conflicts at the hearing, she must show "the conflicts were obvious enough that the ALJ should have picked up on them without any assistance. . . ." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008). Plaintiff has not made such a showing here and nothing from the record demonstrates the ALJ should have been aware of the conflicts. The ALJ specifically asked the VE whether any conflicts existed between her testimony and the DOT; the VE did not indicate her testimony regarding pulmonary irritants or temperature restrictions were not contained in the DOT.

Plaintiff next argues the VE's testimony lacked a reliable basis. Plaintiff takes particular issue with the VE's opinions as to job incidence data. "A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." *Britton v. Astrue*, 521 F.3d 799, 803 (7th Cir. 2008). However, a claimant forfeits any objection to the basis of a VE's testimony if she does not raise the objection at the evidentiary hearing. *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). Plaintiff, here, did not challenge the VE's testimony at the evidentiary hearing. She likens her case to *Loellke*, where this Court found the claimant did not waive her argument by failing to object to the VE at the hearing. In *Loellke*, however, the ALJ was aware of an apparent conflict, which triggered his duty to elicit a reasonable explanation for the conflict and inquire into the basis of the VE's opinion. Here, there was no apparent conflict. Therefore, plaintiff waived any argument challenging the reliability of the VE's opinions when she did not raise an objection at the evidentiary hearing.

Plaintiff posits, "Even without an objection during the hearing, the Seventh Circuit has questioned the overall reliability of vocational testimony and the DOT." (Doc. 18, p. 13). While this may be true, the Seventh Circuit has not overruled prior case law requiring a claimant to preserve her objections to VE testimony at the hearing. *See Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016); *see also Voigt v. Colvin*, 781 F.3d 871, 879 (7th Cir. 2015) (critiquing but not finding erroneous the ALJ's reliance on the VE's unsubstantiated testimony related to job numbers).

Finally, plaintiff argues the ALJ's decision was erroneous because the VE only identified job-numbers on a national level and not per region. According to 20 C.F.R. § 404.1512(b)(3), the Commissioner is responsible for providing "evidence about the existence of work in the national economy that [a claimant] can do . . . ." "Work in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 243(d)(2)(A).

VEs "almost always confine their testimony to indicating the number of such jobs that exist in the applicant's state, or an even smaller area." *Barrett v. Barnhart*, 368 F.3d 691, 692 (7th Cir. 2004). This practice prevents the Social Security Administration from denying benefits based on "isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where the applicant lives." *Id.* (internal quotations and citations omitted). However, it does not matter whether work exists in the immediate area where a claimant lives; the ultimate issue is whether jobs exist in the *national* economy. 20 C.F.R. § 416.966(a).

Plaintiff does not argue the jobs the VE identified exist only in isolation or in concentrated regions. Any such argument would be frivolous. The VE identified jobs like a housekeeper and a routing clerk, which are not regional. Moreover, plaintiff did not dispute the

VE's testimony regarding the job-numbers at the hearing and an ALJ may rely on even "purely conclusional" VE testimony that goes unchallenged. *Barrett*, 355 F.3d 1065 at 1067 (7th Cir. 2004). The Commissioner met her burden of establishing jobs existed in the national economy that plaintiff could perform

Substantial evidence supports the ALJ's decision and he reasonably relied upon the VE's testimony. Plaintiff forfeited any argument she may have as to the reliability of the VE's testimony because she did not raise an objection at the evidentiary hearing and there were no apparent conflicts in the record.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **AFFIRMED.**

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED: MARCH 28, 2018**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**DISTRICT JUDGE**